Good morning. Thank you. Daniel Ball, present on behalf of the defendant appellant Benjamin Quinn McChesney. The convictions in this case must be reversed for a number of reasons. They must be reversed because of improper third-party contact with a juror. They must be reversed because the district court improperly restrained the defendant appellant from having contact with the jury to investigate the third-party contact with the jury. The convictions should be reversed because the district court judge failed to recuse himself after showing partiality in this matter. Additionally, this matter must be reversed because the defendant appellant was not present at critical stages of the proceedings and because the district court failed to issue a subpoena for Brady and potentially Giglio material when the defendant appellant requested an ex parte subpoena for court records, court surveillance, court audio visuals. That's a lot of reasons, but I don't know that we'll get to all of them. I would like to talk with you, though, about the jury issue, which seems to have a fair number of issues embedded in it. My main query is this. Because Lennon keeps changing her story from at least three jurors were there, well, then there was one juror, well, it wasn't the whole jury, well, it was when we were walking out the door and when you turn in your jury badge, that sort of thing. She kept changing her story, and in the end, the judge made this no credibility finding. In light of that, why wasn't it sufficient for the district court to make the ruling that it did? The versions that the district court judge determined showed basically changes over the course of time. I think were natural, inherent changes or explanations that would occur. That's one way to look at it. But then the other way to look at it is there are changes, and it goes to your credibility. So how do we, you know, we don't get to superimpose. Maybe I would have decided this differently, but I've got to look at it to the standard of review, and that lens and the person that looked at the witness. So we have to find its clear error, the adverse credibility determination. I think what the court needs to look at is what occurred at the evidentiary hearing in December of 2015. And that testimony was lengthy. That testimony was supported by an additional witness, Tawna Romero. Their testimony was very similar. However, it wasn't exact. I think the court would have concern if they came in lockstep with A, B, C, and D happened. The court also, in addition to finding inconsistencies between the prior affidavit and their testimony at trial, the court also said that they had a motivation to change, to have, to not be credible because they were relatives of the co-defendant. And also the district court said the court staff who testified were very credible, as well as David Merchant. I think he was the attorney for the co-defendant who said, no, they never told me any of these things. So there was testimony going different ways, and the district court made a credibility determination. And so we have to say that smells like dead fish or whatever that standard is. How do we get there based on this record? Well, the concern is that the evidence that's actually in the record has not been controverted. And by that I mean Lennox's testimony and Romero's testimony in terms of what happened in that elevator in the courthouse. Well, it's not been controverted because there's not really anyone to controvert it other than one. The lawyer said, look, none of this was ever explained to me. But the story of what they said changed. So when you say it isn't controverted, they really were basically controverting their own story from time to time, whether it was in the elevator, whether it was outside the elevator. So I'm having trouble understanding why the fact that you don't have a third-party witness somehow sinks the ship here. Yes, Your Honor. Ms. Romero's testimony cannot be said to have changed. There was no contact with her initially. The only contact or the only evidence in the record from Ms. Romero is what occurred at the hearing. With regard to Ms. Lennox, I mean, we do have the issue of what went into the affidavit in 2013. However, that's why it's so crucial to have hearings in our estimation because then she's subject to questioning. Then she's subject to cross-examination. Well, we told the district court you have to have an evidentiary hearing. That was our first ruling. The district court had the evidentiary hearing and made a ruling. I also take – I can't see how you can say that the testimony wasn't controverted because the court security staff described the procedure and they said there is no way jurors would be mingling with the people who are attending the hearing. Well, the court – Well, and also, too, if you want to kind of do the pile on here, I mean, that you can't – you can't – there was a letter sent to the jurors asking if they had – if anyone had observed an incident that tracked the letter. I mean, the letter that was sent, no one said that they heard anything. Plus the fact that the record – no one ever reported anything to the court. And then I guess the other attorney also said, I don't believe her or something, made their own credibility call or whatever. So, I mean, you have all of that going on. So where a judge has to decide, okay, what do I believe? With regard to the other government witnesses first, the testimony the court will recall was that essentially they weren't there. They were discussing protocols, what they would expect to have happened. It was essentially pure speculation. If that's not pure speculation, I mean, anybody who's spent a lot of time in the district court knows there's procedures about checking in, checking out, the juror badge and all of that. So to credit your statement, we would have to say that despite procedures that are followed as to how the jury is treated, what you do with the badges going in and out of the courthouse, we'd have to throw out all procedure and say, well, now we credit Ms. Lenach. I don't see how we can – why it would be improper for the district court to discount the procedures. But maybe there's something there that's impeached. Well, the concern is that the witnesses testifying about the procedures weren't even sure where they were that day. So we have no idea, no basis in the record to say that those procedures would have been followed. We are in a brand new courthouse in Billings, Montana. This was the first or one of the very first jury trials there. And we've got nobody who was there that day who can say this was the procedure, this was followed. I was there that day. No reports were made to me. Well, all of your arguments, what I would characterize them as, those are really good trial court arguments, but we're here on appeal. And you made those arguments and you lost. And when people call the ball on who they believe and who they disbelieve and how they sort it out, we're put in a different position when we review it. That's correct, Judge. Our concern is that we believe we made a prima facie showing that improper contact occurred. And so we should have been allowed sufficient contact with the jury from the get-go back in 2013. We were denied that. We should have been given that in 2015 prior to the evidentiary hearing. We are denied that. So if we uphold the district court's credibility determination that it's not clear error and decide it's not clear error, then the district court goes on, there's no credible evidence suggesting there was contact, and so we're not going to have jurors brought in and harassed or words to that effect. So if the district court's credibility determination is not clear error, then it seems that no further steps by the district court were required, at least with respect to the jurors. Why is that not the case? The only witnesses we had that day who can testify as to what happened supported the appellant. So you want us to find clear error, and if the district court was clearly erroneous in its credibility determination, then these other things follow. Is that your argument? I don't know that they're mutually exclusive. I believe we can have clear error as to the findings that the district court made. However, even without that, Your Honor, I believe that the evidence reflected a need to investigate jury members, to contact them, a phone call, bringing them into court, an investigator. Well, what if, okay, would you concede that you can't contact jurors for anything that you want? Let's say your client's convicted, and you want to call the jurors and say, don't you just feel really guilty about convicting my client, and don't you, you know, you're going to go to hell and you should change your mind. Would you say that a court would have to give you the juror list to say, I really need to have a heart-to-heart with the jurors because maybe they can't live with their decision now? I don't believe that would be appropriate. Okay. So here, what the court essentially did is said there are times that are appropriate to contact jurors, but if I believe that the incident didn't occur, the jurors have certain rights to be able to live their lives and not have their information out so that people that you can send someone out to ask questions the way that you want, right? That was the district court's position. Our position, Your Honor, is that we had extrinsic evidence which infected the proceedings, therefore that would be a sufficient basis to contact the jury. And so even if your position, just so that I understand it, even if the judge did not believe that it occurred, you think that still the fact that you called someone, albeit found not credible, that you still should have been able to go further, right? Is that okay? Your time has expired, but I will be giving you some rebuttal time. Thank you. Good morning, Your Honors. May it please the Court, my name is Leif Johnson for the United States. Good morning. I think this case adequately provides an example of why the district court should have the discretion that the Montes Court seems to confer, which is to make an initial determination of the credibility of this type of extraneous contact. As the Court stated in Montes, it is a preliminary evidentiary, or it is within the district court's discretion to make a preliminary determination of not only the nature and extent of the contact and the seriousness of the contact, but also the credibility of its source. And that comes from the Montes decision where, in fact, the Court didn't bring the jury in. And in this case, it became quite evident to the district court from the outset that there was some hiding of the ball going on. And I submitted a 28-J letter dealing with the district court's ruling on this sort of ex parte motion for video. Well, what about if, let's just say the letter hadn't gone out asking the jurors if they had had any contact on or about the date was picked relative to when Lennox said it occurred, right? Or Lennox or however, I'm not sure. Lennox, yes. If the Court hadn't sent the juror letter out, would the hearing have been adequate? Yes. Well, no, if they hadn't, if they just said, okay, I'm just going to listen to these people and I'm going to decide it didn't happen and I'm not going to have any, I'm not going to ask the jurors whether anything happened. I think that would have been adequate. You know, there is a case that is actually cited. No, if he hadn't done that, if he just, if he had not sent the letter out to the jurors, would this have been an adequate hearing? Yes. So it wasn't, in your view, that there would never, that no contact needed to be made with the jurors? Yes, and I think it was wise for the Court to do what it did. And I think it took, and actually we all conferred about this and agreed that it should be done because it helps understand. Obviously, I think the Court followed the right procedure here. I think the Court could have simply held the hearing and made its credibility determination without that because it gave very little weight to that information. And the reason I say that is there is some case law in this circuit. DukeTel lists a whole bunch of ex-party contact cases, and it does list a case called English written by Judge Hawkins about a white-collar trial where the allegation was that the jury was just mingling with the public in the lobby, very similar to this case, riding the elevator together. And in that case, Judge Hawkins just said, you know, you didn't ask for a hearing, but this is obviously not prejudicial. And even so, in a footnote, footnote number six in that case, he said, look, you haven't met your initial burden of showing that there was actually a contact here. Did you try this case? Did I? Yeah. No, I did not. Okay. Did you know in the record a lot of times, like I know when I was a trial judge, you tell the jurors every time they take a break, don't consider anything, don't drive by the scene, don't talk to anyone, don't do anything, da-da-da-da-da-da-da-da. Do you know whether those admonitions were given during the trial? They were. And the court actually summarized a number of its instructions to the jury in the first motion, when it denied the motion for a new trial back in 2013, prior to the first appeal. Prior to when we sent it back for a hearing. We have those admonitions all the time. Yes. And if they were perfect, we wouldn't have these juror cases, of which we've had several, where there's been ex-party contact with the jury. So my question is, in the English case, they made the point that it wasn't prejudicial. And the same is true for Montes, which you quoted for saying you have the discretion to decide whether or not to have a live juror testimony. But that's where the allegations on their face could not have prejudiced the jury. And here, the nature of the allegation is such that it would appear to me that it would be prejudicial, if proven to be true. Sure. Doesn't this distinguish Montes? Montes doesn't really tell us anything. Well, Montes is still very helpful, and I'll tell you why. Because there the court said, look, we know this went to the jury, right? We know the jury was infected with this contact. We also know that it wasn't prejudicial. Here, the judge could say, with certainty on the record, we know there was no contact. So we know that the jury wasn't prejudiced by a contact. In other words, he's reaching the same conclusion by making this credibility finding on the record. And incidentally, this is exactly what this court ordered us to do when it remanded the case. It went to the Harbor decision, and the Harbor decision basically requires that the court find whether there's credible allegation of contact, number one. Number two, if so, what the jurors heard. And finally, if you reach those two steps, then was there a reasonable possibility that it could affect the outcome? So the judge here was clearly focused on that first element of the test, and there's nothing in Montes or other case law in this court that requires the court to bring in the jury during that first element of the inquiry. Can you talk about the burden? Because the defendant seems to have changed his mind here. Yes. And the trial court said, well, the burden is on the defendant to provide the credible evidence with respect to extrinsic evidence. And then on appeal, the defendant seems to have changed his mind and said, no, actually, it's your burden, the government, to show beyond a reasonable doubt. So in your view, which is it in terms of the burden? In my view, the burden was properly applied. And in fact, the defense conceded this in the district court at page 25 of the record. They basically said, we acknowledge under the Harbor case that we have the initial burden of coming forward with a credible allegation. It's just on appeal, in the opening brief, they took the opposite position. And they did. That's why I'm asking. They take the opposite position. We think they've obviously already conceded that, and it should be waived for the purposes of appeal. The court applied the proper standard from the Harbor decision, and they agreed to it. And the court relied on it. That's page six of the record. So Harbor sets out a burden-shifting type approach. Yes. So the initial burden is on the defendant. Right. And then once there's a showing, there's credible evidence of a contact, then it shifts to the government. And so your position is that the burden never shifted, if I'm understanding correctly. That is our position, Your Honor. And just to make the record complete, the district court here recited exactly that test. The defendant is, you know, the parties agree the defendant is going to go ahead and make his prima facie case, and then the burden will shift, and we'll talk to the jurors if we need to. And that was the essence of what the district court stated at the beginning of this hearing. Now, after that, we went through the hearing, and it became quite apparent that there were some large problems with the story that was being told. I'm not going to go through all of them. I think the court's findings were adequately supported in the record and are not clearly erroneous. But I think the most telling of them is the allegation, page 54 of the record from Lenach and page 94 from Romero, was that there was just sort of this general mingling. That would be a dramatic departure from our courthouse protocol. It's very clear that it would have been noted by not only court security people, but perhaps lawyers and other persons, and it simply wasn't. The opposing counsel says this is the first trial in a new courthouse, and so procedures possibly were not instituted. Sure. And I don't know for the record if it was the first trial. I'm not sure that that's true. I do know that the record contains information that this protocol was developed at the prior courthouse, particularly the protocol of gathering the jurors and making sure that they are sort of taken out of the courthouse together without contact. That was a big point because the prior courthouse had had more ingress-egress concerns about contacts with the jurors. So it was clearly a well-developed and well-known protocol to take the jurors together, the jury members together to the elevator and out the building, and that was the testimony. Finally, the district court here made, I think, adequate findings. Clearly from page 334 of the record, which I cited in our 28J letter, the district court felt like it was being manipulated by these changing stories. That's clearly what was going on. They asked for this fifth floor video, and yet they alleged that the contacts occurred on the first floor. Well, why would they do that? Why wouldn't they ask us for that fifth floor video? Why wouldn't they ask for our help? They made an ex parte motion for that. Well, the reason is they wanted to check it to see if it would contradict the story that they ended up telling two years later about all these dramatic violations of courthouse protocol. It simply didn't happen. There may have been a person who was exposed to these comments, but it certainly wasn't one of the jurors. And if one of the letters had gone out and a juror had responded, yeah, there was a contact, clearly the court would have called the jury in and we would have examined them on that issue. That wasn't necessary here, and we think the district court should be affirmed. Thank you. Thank you. Please put a minute on the clock for rebuttal. Thank you. With regard to contacting the jurors, it is true that one jury member did not respond, which causes concern as to, again, what that jury member may know, may have known, what may have occurred there. As far as the protocols, again, there's no evidence in the record that these protocols, whatever that may mean, were actually followed. It's a concern that the jury administrator in the courthouse was not the jury administrator for this particular trial. And so the government brings her in two and a half years later, and that particular jury administrator is unable to testify with any knowledge about what happened at this particular trial. With regard to the burden here, regardless of whether it's the defendant appellant's initial burden to make a prima facie case or whether the government must prove from the very beginning, beyond a reasonable doubt, that this did not occur, it's the appellant's position that those burdens were satisfied. We believe the Keating case has similar facts, and that standard should be applied. Thank you. The case just argued, United States v. McChesney, is submitted. Thank both counsel for your argument and for coming over from Billings. The case of United States v. Chatterjee is submitted on the briefs, and we'll hear argument next in Campidoglio v. Wells Fargo.
judges: McKeown, Callahan, Ikuta